| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | ) SS | |
| COUNTY OF PENNINGTON | ) | SEVENTH JUDICIAL CIRCUIT |
| STUART L. CORCORAN, | ) | Civ. No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| EMPLOYERS INSURANCE | ) | |
| COMPANY OF WAUSAU, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Stuart Corcoran for his cause of action against Defendant states and alleges as follows:

1.  Plaintiff Stuart Corcoran is a resident of the State of South Dakota.

2.  Stuart is a former employee of Mousel Construction Company of Rapid City, South Dakota.

3.  As an employer in the State of South Dakota, Mousel Construction Company provides Workers' Compensation coverage for its employees.

4.  Employers Insurance Company of Wausau, hereinafter ("Wausau") provided Workers' Compensation coverage through Mousel Construction Company to employees such as Stuart Corcoran.

5.  On April 28, 1995, Stuart Corcoran suffered an injury to his right knee arising out of the course and scope of his employment.

6.  Because Stuart Corcoran's injury and medical condition were work-related, he was eligible for payment of all reasonable medical expenses and other benefits under Workers' Compensation as provided for by South Dakota law.

"Exhibit 2"

Doc# 369645v1, 6081-000713

7. Defendant initially accepted Stuart Corcoran's claim for Workers' Compensation benefits as compensable and paid Stuart Corcoran Workers' Compensation benefits, including but not limited to medical care.

8. On August 28, 1995, Wausau requested Stuart Corcoran's treating physician, Dr. George Jenter to state whether Stuart had suffered a permanent impairment as a result of the April 28, 1995 injury and if so, the degree of that permanent impairment.

9. On September 28, 1995, Dr. Jenter advised Defendant that Stuart Corcoran had suffered a permanent injury and that he had also suffered a permanent impairment as a result of the April 28, 1995 injury.

10. Stuart Corcoran was able to return to his employment with Mousel Construction Company following the April 28, 1995 injury. However, as a result of the work injury and his permanent impairment he encountered difficulty performing his work duties as a concrete finisher.

11. Although Stuart Corcoran continued to work as a concrete finisher for some time after the April 28, 1995 injury, by August 2000 Stuart Corcoran's condition as a result of the April 28, 1995 injury was such that he was unable to continue employment or obtain other employment and even if he had been able to obtain employment, he would be unable to secure employment other than sporadic employment resulting in an insubstantial income.

12. On July 24, 2001, Stuart Corcoran filed a Petition for Hearing with the South Dakota Department of Labor, Division of Workers' Compensation.

13.   Defendant entered an Answer in that proceeding denying any responsibility for payment of Workers' Compensation benefits to Stuart Corcoran after Defendant accepted the opinion of Dr. Jenter in September 1995 and never disputed his October 1995 opinion that Stuart Corcoran's condition as a result of his April 28, 1995 injury was permanent, nor did they dispute the permanent impairment rating assigned by Dr. Jenter.

14.   Defendant was given full opportunity to investigate this matter and the parties engaged in extensive discovery.

15.   Defendant then retained the services of Dr. Dale Anderson and requested Dr. Anderson to perform a single short medical examination of Stuart Corcoran.

16.   Dr. Anderson admitted that the April 28, 1995 injury was an aggravation. He further testified that while the April 28, 1995 injury was an aggravating factor, the injury "could" have healed and went back to a steady state. He further testified that the increased stress on Stuart Corcoran's left knee as a result of the aggravation of his right knee caused that knee to deteriorate as well.

17.   At the time Dr. Anderson testified, Defendant was aware that in October 1995 it had requested and obtained an opinion from Stuart Corcoran's treating physician Dr. Jenter that Stuart Corcoran's knee condition was permanent and that he also suffered a permanent impairment from the April 28, 1995 injury.

18.   Subsequent to Dr. Anderson testifying that the April 28, 1995 injury was, at a minimum, an aggravation of Stuart Corcoran's right knee condition and that condition then placed increased stress on his left knee causing it to deteriorate.

Defendant continued its denial and refused to pay Stuart Corcoran Workers' Compensation benefits without a reasonable basis.

19. Rather than pay Stuart Corcoran Workers' Compensation benefits to which he was entitled, Defendant, after an opportunity for a thorough investigation and after retaining a medical doctor to examine Stuart Corcoran, continued to refuse to pay Stuart Corcoran the Workers' Compensation benefits to which he was entitled.

20. Defendant forced Stuart Corcoran to go through a hearing with the Department of Labor, which ruled in Stuart Corcoran's favor. Following that hearing and the entry of the Department of Labor's Order awarding Stuart Corcoran Workers' Compensation benefits, Defendant appealed that decision of the South Dakota Circuit Court.

21. Defendant continues to defend Stuart Corcoran's claim for Workers' Compensation without a reasonable basis thereby prolonging the period of denial of Workers' Compensation benefits.

22. In doing the acts described in this Complaint, Defendant knew it would cause financial and emotional injury to Stuart Corcoran. Yet Defendant carried out its adjustment of his claim with a conscious disregard of his rights to the Workers' Compensation benefits, subjected him to cruel and unjust hardship and took action regarding Stuart Corcoran with the intention of depriving him of the Workers' Compensation benefits to which he is entitled.

23. As a result of Defendant's unjustified conduct, Stuart Corcoran has been damaged and continues to be damaged by being denied Workers' Compensation benefits,

being required to pay unnecessary attorneys fees and costs, as well as significant

inconvenience, frustration, mental distress, embarrassment and humiliation.

## COUNT I
## BAD FAITH

24. Plaintiff realleges paragraphs 1 through 23 above inclusive and they are specifically
incorporated by reference as if set out in full herein.

25. Defendant knew of should have known it had no reasonable basis to deny Stuart
Corcoran's claim for Workers' Compensation benefits.

26. Defendant failed to perform a reasonable investigation before denying Stuart
Corcoran's claim.

27. Defendant failed to give equal consideration to the interest of its insured, Stuart
Corcoran.

28. Defendant breached its duty of good faith and fair dealing with Stuart Corcoran.

29. As a direct and proximate result of Defendant's unjustified conduct, Stuart
Corcoran has been damaged as set forth in paragraph 23 above.

## COUNT II
## BREACH OF CONTRACT

30. Plaintiff realleges paragraphs 1 through 29 above inclusive and they are specifically
incorporated by reference as if set out in full herein.

31. Defendant breached the contract of insurance by failing to honor the terms and
conditions of that contract.

32. As a direct and proximate result of Defendant's unjustified conduct, Stuart
Corcoran has been damaged as set forth in paragraph 23 above.

## COUNT III
## BARRATRY

33.   Plaintiff realleges paragraphs 1 through 32 above inclusive and they are specifically incorporated by reference as if set out in full herein.

34.   Defendant forced Stuart Corcoran to file a legal proceeding in order to recover benefits that were clearly owed to him and when he did so, Defendant asserted defenses to those claims which they knew were either false, without merit, frivolous, malicious, lacking a reasonable basis in fact or asserted for the purposes of delay and were filed with malice and in bad faith.

35.   As a direct and proximate result of Defendant's unjustified conduct, Stuart Corcoran has been damaged as set forth in paragraph 23 above.

## COUNT IV
## ABUSE OF PROCESS / STATUTORY DECEIT

36.   Plaintiff realleges paragraphs 1 through 35 above inclusive and they are specifically incorporated by reference as if set out in full herein.

37.   Defendant engaged in an abuse of process by using the judicial process for an ulterior and improper purpose.

38.   Defendant's use of the Workers' Compensation system to deny Stuart Corcoran's claim was:

   a.   an attempt to reduce its own cost and increase profitability as opposed to an attempt to dispute a debatable claim;

   b.   an attempt to communicate a message to other employees entitled to Workers' Compensation benefits from Defendant that if a claim for Workers' Compensation benefits is made, Defendant will not reconsider its denial or settle the claim, but rather will require the Claimant to go through legal proceedings and to exhaust every legal remedy before payment, even though Defendant knows the defenses asserted to the claim are without a reasonable basis.

39.   As a direct and proximate result of Defendant's unjustified conduct, Stuart

Corcoran has been damaged as set forth in paragraph 23 above.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

40.   Plaintiff realleges paragraphs 1 through 39 above inclusive and they are specifically

incorporated by reference as if set out in full herein.

41.   At all times material hereto, Defendant knew that Stuart Corcoran was relying on

Defendant to pay the benefits to which he is entitled.  Despite that fact, Defendant

denied Stuart Corcoran's claim and required him to retain an attorney to litigate his

entitlement to Workers' Compensation benefits and Defendant continues in its

denial.

42.   Defendant's actions are outrageous and intended to inflict severe emotional distress

upon Stuart Corcoran, as well as other employees entitled to Workers'

Compensation benefits from Defendant, or done for the purpose of preventing

employees from making Workers' Compensation claims.

43.   As a result of Defendant's action, Stuart Corcoran suffered mental anguish and

distress.

44.   As a direct and proximate result of Defendant's unjustified conduct, Stuart

Corcoran has also been damaged as set forth in paragraph 23 above.

## COUNT VI
## PUNITIVE DAMAGES

45.   Plaintiff realleges paragraphs 1 through 44 above inclusive and they are specifically

incorporated by reference as if set out in full herein.

46.   Defendant acted with malice, oppression and deliberate and reckless disregard for the rights of Stuart Corcoran.

47.   Defendant acted in accordance with its standard practices, policies and procedures in Workers' Compensation cases pursuant to a plan to unlawfully minimize claim expenses by not paying legitimate claims.

48.   Plaintiff is entitled to an award of punitive damages as the only way to deter Defendant from continuing to employ the same methods against other injured employees.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1.   For compensatory damages, including special and general damages as may be proven at trial;

2.   For exemplary damages;

3.   For his costs and disbursements, including attorneys fees pursuant to SDCL § 58-12-3, or as otherwise may be allowed by law;

4.   For prejudgment and post-judgment interest; and

5.   For such other and further relief as the Court deems equitable and just in the circumstances.

Dated this _____ day of October, 2005.

GUNDERSON, PALMER, GOODSELL &
NELSON, LLP

By: _____

Mark J. Connot
Attorneys for Plaintiff
440 Mt. Rushmore Road, 3rd Floor
PO Box 8045
Rapid City, SD 57709-8045
(605)342-1078

## PLAINTIFF DEMANDS TRIAL BY JURY